**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| WIN WASTE INNOVATIONS OF SENECA COUNTY LLC, | ) | Case No. 3:25-cv-1065-JJH |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Jeffrey J. Helmick |
| v. | ) | |
| | ) | |
| SENECA COUNTY GENERAL HEALTH DISTRICT, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM**

## <u>TABLE OF CONTENTS</u>

Page

I.  **Plaintiff's efforts to differentiate *Burford* and related cases are unavailing because this case seeks regulatory analysis from a federal court aimed at disrupting a comprehensive state administrative system.**................................2

    A.  ERAC's jurisdiction is not a hurdle to abstention in this case. .............................2

    B.  The Court must engage in regulatory analysis to adjudicate Plaintiff's Complaint. ....................................................................................................3

    C.  Plaintiff identifies no meaningful differentiating factors from relevant Ohio cases applying *Burford* abstention in environmental regulatory cases. ....................................................................................................4

II.  **The District and the Health Board are entitled to Eleventh Amendment immunity.**...........................................................................................................5

III.  **Plaintiff provides no rational basis for maintaining the personal capacity claims for equitable relief because Plaintiff's claims relate only to the Board Defendants' exercise of their official authority.** ............................................7

IV.  **The Commerce Clause does not provide Plaintiff an avenue to litigate its dissatisfaction with the License Conditions.** ...................................................9

    A.  Plaintiff alleges no discriminatory treatment by the License Conditions that amounts to a violation of the Commerce Clause. ..........................................9

    B.  Plaintiff makes no allegation to support its extraterritoriality arguments............11

    C.  Plaintiff makes no allegation to support application of *Pike* balancing to invalidate the License Conditions. .....................................................................12

V.  **Plaintiff's Due Process Claims Fail as a Matter of Law.**...............................13

**CONCLUSION** ...............................................................................................................14

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Ada-Cascade Co. Inc. v. Cascade Res. Recovery, Inc.*,
  720 F.2d 897 (6th Cir. 1983) ................................................................3

*Amerada Hess Corp. v. Director, Div. of Tax'n*,
  490 U.S. 66 (1989) .............................................................. 10, 11

*Austin v. State Indus. Ins. Sys.*,
  939 F.2d 676 (9th Cir. 1991) ..............................................................6

*State ex rel Brown v. Hamilton Twshp.*,
  No. 1643, 1984 WL 4222 (Ohio Ct. App. Jan. 12, 1984) ..................................6

*Burford v. Sun Oil Co.*,
  319 U.S. 215 (1943) ..............................................................*passim*

*Chilcoat v. San Juan Cnty.*,
  41 F.4th 1196 (10th Cir. 2022) ............................................................8

*City of Phila. v. New Jersey*,
  437 U.S. 617 (1978) ............................................................9

*Commissioner of Internal Revenue v. Estate of Bosch*,
  387 U.S. 456 (1967) ............................................................6

*Community Mental Health Servs. of Belmont v. Mental Health & Recovery Bd.*,
  150 F. App'x 389 (6th Cir. 2005) .......................................................7

*Crossridge, Inc. v. Ohio E.P.A.*,
  No. C-88-231, 1989 WL 252312 (S.D. Ohio Mar. 1, 1989) ........................ 4, 5, 13

*DeMoise v. Dowell*,
  10 Ohio St. 3d 92 (1984) .........................................................6

*Eastern Ky. Res. v. Fiscal Ct. of Magoffin Cnty., Ky.*,
  127 F.3d 532 (6th Cir. 1997) .................................................. 10, 11

*Fairfield Cnty. Bd. of Comm'rs v. Koncelik*,
  2013-Ohio-2106 (10th Dist.) .........................................................2

*Frank v. Relin*,
  1 F.3d 1317 (2d Cir. 1993) .........................................................8

*Granholm v. Heald*,
    544 U.S. 460 (2005) ........................................................................................................ 10

*Hahn v. Star Bank*,
    190 F.3d 708 (6th Cir. 1999) ..................................................................................... 13, 14

*Healy v. Beer Ins. Inc.*,
    491 U.S. 324 (2013) ........................................................................................................ 12

*Herbst v. Resolution Tr. Corp.*,
    66 Ohio St. 3d 8 (1993) .................................................................................................... 2

*Interstate Bi-Modal v. State of Ohio*,
    No. C-2-88-880, 1988 WL 236131 (S.D. Ohio Sept. 1, 1988) ........................................... 4, 5

*Kays v. Schregardus*,
    138 Ohio App.3d 225 (Ohio Ct. App. 2000) .................................................................... 2

*Knowlton v. City of Wauwatosa*,
    119 F.4th 507 (7th Cir. 2024) ......................................................................................... 8

*Lowe v. Hamilton Coun Department of Job & Family Services*,
    610 F.3d 321 (6th Cir. 2010) ......................................................................................... 5

*McDaniels v. Flick*,
    59 F.3d 446 (3d Cir.1995) ............................................................................................. 14

*National Pork Producers v. Ross*
    598 U.S. 356 (2022) ................................................................................................. 11, 12

*Oregon Waste Sys., Inc. v. Dep't of Envt. Quality*,
    511 U.S. 93 (1994) .......................................................................................................... 9

*Quackenbush v. Allstate Ins. Co.*,
    517 U.S. 706 (1996) ........................................................................................................ 5

*Regents of the Univ. of Cal. v. Doe*,
    519 U.S. 425 (1997) ........................................................................................................ 6

*S.J. v. Hamilton Cnty., Ohio*,
    374 F.3d 416 (6th Cir. 2004) ......................................................................................... 5

*Truesdell v. Friedlander*,
    80 F.4th 762 (6th Cir. 2023) ..................................................................................... 12, 13

*Watts v. Burkhart*,
    854 F.2d 839 (6th Cir. 1988) ......................................................................................... 2

*Wetterer v. Hamilton Cnty. Bd. of Health*,
   167 Ohio St. 127 (1957) ............................................................................................7

**Statutes**

42 U.S.C. § 1983 ........................................................................................... 1, 7, 13

Ohio Rev. Code § 124.01(B) ..............................................................................6

Ohio Rev. Code § 3734.08 ..................................................................................6

Ohio Rev. Code § 3745.04 ................................................................................14

Ohio Rev. Code § 3745.05 ................................................................................14

Ohio Rev. Code § 3745.06 ............................................................................2, 14

**Other Authorities**

Eleventh Amendment ...................................................................... 1, 5, 6, 7, 14

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFF'S COMPLAINT**

Plaintiff WIN Waste Innovations of Seneca County LLC's ("Plaintiff") opposition (ECF No. 16) to Defendants' Motion to Dismiss (ECF No. 15) confirms that this case is not about genuine constitutional violations, it is a collateral attack based on dissatisfaction with the landfill licensing decisions by an Ohio state agency. At its most basic level, the Complaint asks the Court to exercise super-licensing authority over Defendants Seneca County General Health District (the "District"), the Seneca County Board of Health (the "Health Board"), and the individual current, former, and future Board Members.[1]

Plaintiff is already litigating the same licensing issues before the statutorily created Environmental Review Appeals Commission ("ERAC"), the specialized body the Ohio General Assembly has entrusted with reviewing an Ohio health district's licensing decisions. Those proceedings are ongoing. *Burford* abstention and dismissal are not only appropriate here, they are necessary to avoid disruption of Ohio's comprehensive regulatory scheme governing solid waste and landfill licensing and to respect the principles of federalism by allowing the State-created forums for dispute resolution to operate without undue interference.

Alternatively, if the Court declines to abstain under *Burford*, it must dismiss Plaintiff's 42 U.S.C. § 1983 claims because they fail under the immunities afforded to the State and state actors under the Eleventh Amendment and on their merits. At bottom, Plaintiff's Complaint is nothing more than dressed-up challenges to licensing decisions already under review in Ohio's administrative system. The Court should decline Plaintiff's invitation to federalize the licensing dispute, respect Ohio's sovereign interests, and dismiss the Complaint.

---

[1] Plaintiff names current Health Board President Clay Wolph, Vice President Robert Podach, and member Nathanael T. Heiser. (ECF No. 1, ¶¶ 40–42.) Plaintiff also names former Health Board President, Zachary West. (*Id.*, ¶ 43.)

I.   **Plaintiff's efforts to differentiate *Burford* and related cases are unavailing because this case seeks regulatory analysis from a federal court aimed at disrupting a comprehensive state administrative system.**

   A.   **ERAC's jurisdiction is not a hurdle to abstention in this case.**

As a threshold issue, ERAC's lack of jurisdiction over constitutional claims does not preclude abstention in this case because Plaintiff will "have an adequate opportunity to raise [its] constitutional claims at some point in the state proceedings." *Watts v. Burkhart*, 854 F.2d 839, 848 (6th Cir. 1988) (concluding that the fact that a state agency could not consider constitutional claims did not preclude abstention in federal court). Indeed, it is entirely sufficient that "constitutional claims may be raised in state court judicial review of the administrative proceeding." *Id.* (quoting *Ohio Civ. Rts. Comm'n v. Dayton Christian Schs.*, 477 U.S. 619, 629 (1986)).

Appeals from ERAC decisions are taken to the Tenth District Court of Appeals. Ohio Rev. Code § 3745.06. And Plaintiff is currently availing itself of that appeal procedure for both the 2023 and 2024 licensing decisions and is awaiting a hearing regarding its 2025 license. (ECF No. 15, PageID #964 (describing Plaintiff's current appeal challenging certain conditions on its 2023 and 2024 licenses (the "License Conditions") and raising a federal preemption claim); *id.*, PageID #964–65 (describing the procedural posture of Plaintiff's 2025 license).) The Ohio Courts of Appeal are competent to adjudicate federal constitutional claims. *Herbst v. Resolution Tr. Corp.*, 66 Ohio St. 3d 8, 10 (1993). The Ohio Courts of Appeal have ruled on constitutional challenges to administrative decisions in appeals of ERAC decisions. *See, e.g.*, *Fairfield Cnty. Bd. of Comm'rs v. Koncelik*, 2013-Ohio-2106, ¶ 80 (10th Dist.); *Kays v. Schregardus*, 138 Ohio App.3d 225, 231–32 (Ohio Ct. App. 2000). Therefore, ERAC's jurisdiction to resolve constitutional issues does not preclude abstention under *Burford*.

**B.**     **The Court must engage in regulatory analysis to adjudicate Plaintiff's Complaint.**

Plaintiff mischaracterizes its claims in an attempt to avoid abstention. Plaintiff claims that it is not asking the Court to perform any "environmental regulatory analysis." (ECF No. 16, PageID #1014). To the contrary, Plaintiff wants the Court to engage in regulatory analysis to: invalidate the License Conditions as unconstitutional; reverse the Health Board's 2025 Notice of Intent to Deny, declare the Health Board misapplied its authority; and prevent the Health Board from issuing licensing conditions in the future.  Plaintiff argues that it is not asking the Court to decide regulatory issues because ERAC deemed some of the License Conditions to be unlawful.  (ECF No. 16, PageID # 1014.) Plaintiff fails to acknowledge that ERAC upheld several License Conditions (*see* ECF No. 1, ¶ 111; ECF No. 15, PageID #963–64 (describing the ERAC's rulings on the 2023 and 2024 License Condition), and Plaintiff is asking the Court to invalidate those conditions as well.

Adjudication of these issues in federal district court risks disrupting the coherent regulatory scheme and specialized state-created forum that the Ohio General Assembly has created to regulate solid waste disposal and landfill licensing. All of Plaintiff's claims require the Court to second guess the Health Board's application of its lawful authority and ERAC's review decisions, which are all predicated on the significant State interest of local land use and waste disposal. This is precisely the type of case that *Burford* abstention should apply to protect the significant state interests and schemes at issue here. *See Ada-Cascade Co. Inc. v. Cascade Res. Recovery, Inc.*, 720 F.2d 897, 903–04 (6th Cir. 1983); *Burford v. Sun Oil Co.*, 319 U.S. 215, 332–33 (1943) (concluding that when a complex state regulatory system exists involving administrative decision-making and judicial review, that system should be allowed to function without continual

3

interference from the federal courts). Therefore, the Court should not insert itself in Ohio's waste disposal regulatory scheme and abstain and dismiss Plaintiff's Complaint.

### C.  Plaintiff identifies no meaningful differentiating factors from relevant Ohio cases applying *Burford* abstention in environmental regulatory cases.

Plaintiff fails to meaningfully distinguish the two similar Southern District of Ohio cases cited in Defendants' Motion to Dismiss that applied *Burford* abstention and dismissed similar constitutional claims related to environmental regulation under two complex regulatory schemes established under Ohio law. (*See* ECF No. 15, PageID #968–69 (discussing *Burford* abstention in *Interstate Bi-Modal v. State of Ohio*, No. C-2-88-880, 1988 WL 236131, *7 (S.D. Ohio Sept. 1, 1988) and *Crossridge, Inc. v. Ohio E.P.A.,*, No. C-88-231, 1989 WL 252312, *2 (S.D. Ohio Mar. 1, 1989).)

The court in *Interstate Bi-Modal* abstained from considering a licensee's due process claims related to air pollution permit requirements, citing the complex regulatory review scheme for air pollution under Ohio law. 1988 WL 236131 at *7–*8. Here, as in *Interstate Bi-Modal*, Plaintiff asks the Court to consider due process claims related to the imposition and enforcement of licensing conditions, despite Ohio's complex regulatory scheme related to solid waste and avenues for review of those conditions. Plaintiff does not dispute that Ohio created a complex regulatory scheme for solid waste and landfill licensing, just as the one created for air pollution permits at issue in *Interstate Bi-Modal*. In dismissing the plaintiff's due process challenge, the court concluded that "consideration of the [due process claim] would interfere with the state's development and application of its permit requirements and its procedures for application therefore and review of decisions thereon" especially in light of "an action that is already pending in state court which the applicability of the permit requirements is at issue." *Id.* at *7. The same reasoning supports abstention and dismissal here.

The court in *Crossridge* abstained and dismissed the case under *Burford* because, as is the case here, the "Ohio [waste disposal regulatory] scheme would afford adequate judicial review for all of the issues, statutory and constitutional raised by plaintiff." 1989 WL 252312 at *3.  It is immaterial that the plaintiff in *Crossridge* sued the Ohio EPA as opposed to a health district. In *Crossridge*, the Ohio EPA was the landfill licensing authority that denied the plaintiff's license. *Id.* at *1. The District and the Health Board are the relevant administrative entities in this case.

Here, Plaintiff wants the Court to second guess ERAC's decision to uphold certain License Conditions, second guess the Health Board's 2025 Notice of Intent to Deny and prevent the Health Board from conditioning Plaintiff's landfill licenses in the future. Plaintiff's lawsuit seeks to skirt the administrative process and specialized state forum created to adjudicate licensing issues, while it is simultaneously availing itself of that same process. *See Burford,* 319 U.S. at 327 (describing that without abstention there can be unnecessary and disruptive "double system of review" for state administrative issues leading to "delay, misunderstanding of local law, and needless federal conflict with State policy"). Accordingly, the Court should abstain and dismiss this case as the Southern District of Ohio did in *Interstate Bi-Modal* and *Crossridge*. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731 (1996) (noting that dismissal is permissible under *Burford* where only equitable relief is sought).

## II.     The District and the Health Board are entitled to Eleventh Amendment immunity.

Plaintiff's application of the four-factor test described in *Lowe v. Hamilton Coun Department of Job & Family Services*, 610 F.3d 321 (6th Cir. 2010) ignores Ohio Supreme Court treatment of the District and the Health Board as arms of the state. Plaintiff overemphasizes the first *Lowe* factor, whether a judgment would be paid from the state treasury. This factor is not dispositive of the Eleventh Amendment inquiry. *See S.J. v. Hamilton Cnty., Ohio*, 374 F.3d 416, 421 (6th Cir. 2004) (citing *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 39, 47 (1994))

(noting that when the immunity factors cut in different directions, the Eleventh Amendment's purposes of "money and dignity" "remain our prime guide" in arm-of-the-state inquiry).

The other *Lowe* factors, especially state law characterization and entity functions, confirm immunity here. Plaintiff ignores the repeated Ohio Supreme Court authority that Defendants cite in their Motion to Dismiss holding that Ohio health districts and the boards formed under them are state agencies exercising state-delegated authority. (ECF No. 15, PageID #970–71); *see also* Ohio Rev. Code § 124.01(B) (defining "State service" to include "all offices and positions in the services of the state and the counties and general health districts of the state"). Federal courts frequently hold that state court conclusions regarding whether entities are arms of the state are entitled to a degree of deference. *See Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 677–79 (9th Cir. 1991). Indeed, "the State's highest court is the best authority on its own law." *Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465 (1967). Therefore, this factor weighs in favor of immunity. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 430 n.5 (1997) (noting that the Eleventh Amendment inquiry "can be answered only after considering the provisions of state law that define the agency's character").

The Ohio General Assembly has delegated quintessential state police power authority to the health districts. (ECF No. 1, ¶¶ 3, 4, & 86.) "It is fundamental that the protection and preservation of the public health is a prime governmental concern and thus a function of the state." *DeMoise v. Dowell*, 10 Ohio St. 3d 92, 93 (1984) (noting that the State can delegate its "police power concerning public health" to other government agencies). The District and the Health Board's functions are to protect public health, issue licenses, and enforce environmental statutes. *See State ex rel Brown v. Hamilton Twshp.*, No. 1643, 1984 WL 4222, *1 (Ohio Ct. App. Jan. 12, 1984) (noting that pursuant to Ohio Rev. Code § 3734.08, health districts "assumed the

6

responsibility of enforcing state laws concerning the dumps"). Indeed, the District and the Health Board can exercise authority only as awarded by the General Assembly and or is fairly implied from its expressly granted authority. *See Wetterer v. Hamilton Cnty. Bd. of Health*, 167 Ohio St. 127, 137 (1957). This factor also weighs in favor of a grant of immunity.

The Court should find the Eleventh Amendment applies to Defendants by respecting the characterization of District and the Health Board under Ohio law and the authority exercised by the same as being part of Ohio's delegated police powers and authority over public health. For these reasons and those stated in the Motion to Dismiss, the Court must dismiss the claims against the District, the Health Board, and the ultra vires claim against the Board Defendants. (ECF No. 15, PageID 970–71.)

### III.   Plaintiff provides no rational basis for maintaining the personal capacity claims for equitable relief because Plaintiff's claims relate only to the Board Defendants' exercise of their official authority.

Claims for equitable relief under Section 1983 are proper against a defendant in their official capacity because the injunction "relates only to the official's job." *Community Mental Health Servs. of Belmont v. Mental Health & Recovery Bd.*, 150 F. App'x 389, 401 (6th Cir. 2005). Plaintiff's requests for relief do not relate to the *personal behavior* of Defendants in any way. Plaintiff's requested relief relates to imposition and enforcement of license conditions on Plaintiff's current and future landfill licenses. Plaintiff requests: (1) a declaration that Defendants acted in ultra vires; (2) a declaration that that the License Conditions and the 2025 Notice of Intent to deny violate the Commerce Clause; (3) a declaration that that the License Conditions and the 2025 Notice of Intent to deny violate the Due Process Clause; (4) and the Court to permanently enjoin Defendants from enforcing the License Conditions or similar conditions on subsequent license applications. (ECF No. 1, PageID #29–30 (Plaintiff's prayer for relief).)

Plaintiff cannot use its opposition to Defendants' Motion to Dismiss to allege new facts to retain duplicative and unnecessary personal capacity claims for equitable relief. *See Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1214 (10th Cir. 2022); *Knowlton v. City of Wauwatosa*, 119 F.4th 507, 519 (7th Cir. 2024); *Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993).

Plaintiff provides no allegation or explanation on how the Board Defendants, acting in their personal capacity, would have any authority to either issue landfill licenses, apply conditions to those licenses, or otherwise act to enforce Ohio's solid waste laws. The Board Defendants, in their personal capacities, can enforce the solid waste laws or grant landfill licenses no more than any other citizen. It is only in their official role on the Health Board that they may exercise that authority.

Additionally, Plaintiff's requested relief in the Complaint relates neither to stopping the political activities of the Board Members, as *individuals*, nor contains any allegation about the Board Defendants once they have left the Health Board. The Board Defendants do not shed their rights to participate in political debate once they become part of the Health Board. Plaintiff's theory would prevent Board Members' political activism simply because Plaintiff views such activities as evidence of "bias."

Plaintiff's contentions about the future conduct of the Board Defendants after they have left the Health Board fare no better. (*See* ECF No. 16, PageID #1016.) To enjoin future political opposition to the Landfill[2] would prevent the Board Defendants, after they have left their position, from exercising their free speech rights. After they have left office, the Board Defendants are private citizens. Plaintiff provides no authority under which such an injunction would be proper against the Board Defendants in their personal capacities, either as current or former members of

---

[2] "Landfill" has the same meaning as provided in Defendant's motion to dismiss. (ECF No. 16, PageID #962.)

the Health Board. The absurdity of Plaintiff's request to maintain the personal capacity claims is underscored by its contention that additional evidence of bias to support such a broad sweeping injunction includes a Board Member's non-party spouse's political opposition to the Landfill. (ECF No. 16, PageID #1017 n.11.) For these reasons, the Court must dismiss the personal capacity claims for equitable relief.

IV.    **The Commerce Clause does not provide Plaintiff an avenue to litigate its dissatisfaction with the License Conditions.**

      A.    **Plaintiff alleges no discriminatory treatment by the License Conditions that amounts to a violation of the Commerce Clause.**

A threshold requirement under the Commerce Clause is that the License Conditions must be discriminatory. In other words, to support a Commerce Clause claim, the License Conditions must benefit in-state economic interests to the detriment of Plaintiff. *Oregon Waste Sys., Inc. v. Dep't of Envt. Quality*, 511 U.S. 93, 99 (1994). Mere differential treatment of in-state and out-of-state interests, without the associated economic benefits and detriments, is insufficient to establish discrimination. *See City of Phila. v. New Jersey*, 437 U.S. 617, 624 (1978).

There is no dispute that the License Conditions are facially neutral and apply evenhandedly to all waste delivered to the facility by railcar. (ECF No. 15, PageID #972.) Plaintiff states that no other landfill in the State is subject to the same license conditions, but differential regulation is not discriminatory in and of itself and is the logical outcome of Ohio EPA's delegation of landfill licensing authority to the various Ohio health districts. (*See* ECF No. 1, ¶¶ 3, 4, & 86.) Therefore, because different governing bodies (the various health districts) will be evaluating landfill license applications, assessing the need for certain conditions on those licenses, and ultimately enforcing those conditions and the associated laws and regulations governing the same, landfills will be treated differently throughout the State. What Plaintiff is missing then, are allegations related to the District and Health Board's "motivation" or "intent" to "confer a benefit upon a local industry

9

not granted to out-of-state industry." *Amerada Hess Corp. v. Director, Div. of Tax'n*, 490 U.S. 66, 76 (1989). And that is fatal to its claim.

The lack of discriminatory intent and effect is further evident by the plain language of the License Conditions. *Eastern Ky. Res.* v. *Fiscal Ct. of Magoffin Cnty., Ky.*, 127 F.3d 532, 542 (6th Cir. 1997) (noting that the Court first considers statutory text to determine whether discriminatory intent exists). If Plaintiff were to transport in-state waste via railcar, it would be subject to the same License Conditions. Plaintiff attempts to recast its Complaint allegations by arguing that only its trucks, not its railcars, transport in-state waste. (ECF No. 16, PageID #1019–23.) But Plaintiff does not allege as much in the Complaint, which states that "[o]ver 90% of the waste accepted by the Landfill is delivered via railcar from" out-of-state. (ECF No. 1, ¶ 1.) Plaintiff does not allege anything about the way the other 10% of its waste is transported or where that waste originates from. But even if Plaintiff did make that allegation, Plaintiff provides no further allegation or argument that the District and the Health Board must treat waste transported by truck and waste transported by railcar the exact same. Indeed, Plaintiff does not argue that the District and the Health Board lack any basis to regulate rail-car-delivered waste differently than truck-delivered waste.

Moreover, the "object and effect" of the License Conditions are not to "prohibit" or "make impractical" the transport of out-of-state waste. *Granholm v. Heald*, 544 U.S. 460, 465–66 (2005). By their plain language, they do not. They simply regulate the way waste is delivered to the Landfill—requiring certain covers over the railcars. Plaintiff makes no allegation that its transport of waste from out-of-state has been otherwise prevented or impeded by the License Conditions to the benefit of the other landfills in the State. Plaintiff just does not want to comply with the License Conditions.

There is no dispute that the License Conditions are facially neutral. Plaintiff seeks to manufacture discrimination through the intent and practical effect of the License Conditions but fails on that front too. Plaintiff fails to state a Commerce Clause claim because there are no allegations relating to the economic detriment imposed by the License Conditions to the benefit of other landfills and no support for Plaintiff's contention that differential regulation of different modes of waste transportation, without a text-based concern to the origin of the waste carried by a specific mode of transport, amounts to discrimination. *Eastern Ky. Res.*, 127 F.3d at 542–44; *Amerada,* 490 U.S. at 75–76.

**B.**   **Plaintiff makes no allegation to support its extraterritoriality arguments.**

In *National Pork Producers v. Ross*, the Supreme Court narrowed the (already narrow) applicability of the extraterritoriality doctrine of the Commerce Clause. 598 U.S. 356, 372–74 (2022) (noting that the only cases in which the Supreme Court has identified an impermissible territorial effect have dealt with price affirmation or price fixing). This is because "many (maybe most) state laws," especially environmental and health laws, have the "practical effect of controlling" extraterritorial behavior. *Id.* at 374. Therefore, Plaintiff's conclusory contention that the License Conditions have "extraterritorial effects" does not equate to a violation of the Commerce Clause.

The fact that the License Conditions would "regulate the form of rail cars entering the Landfill" is not an unconstitutional exterritorial effect. (ECF No. 16, PageID #1022.) Plaintiff makes no allegation how regulating the way in which railcars entering an Ohio landfill deliberately prevent or discriminate against interest commerce by affecting commerce *wholly* out-of-state. *See Ross*, 598 U.S. at 374. Plaintiff sought a permit to operate the Landfill in Ohio. Plaintiff has customers that transport both in-state and out-of-state waste through Ohio. Therefore, there is no allegation that commerce occurring entirely outside of Ohio would be affected by the License

11

Conditions. There is additionally no allegation that Plaintiff or its customers' compliance with the License Conditions would challenge their ability to comply with another State's laws. *See Healy v. Beer Ins. Inc.*, 491 U.S. 324, 336 (2013). Indeed, the License Conditions do not restrict the type or origin of waste, apply to affect the waste that Plaintiff or its customers transport to other facilities, or represent some other type of impermissible effect.

The License Conditions Plaintiff specifically identifies as violative of the Commerce Clause involve placing coverings over the rails cars that arrive at the Landfill. (ECF No. 1, ¶¶ 168 & 169.) The incidental effects of how Plaintiff or its customers package or transport waste that travels across Ohio (to which Plaintiff makes no specific allegation) to a landfill located in Ohio do not represent a constitutionally cognizable extraterritorial burden.

C.     **Plaintiff makes no allegation to support application of *Pike* balancing to invalidate the License Conditions.**

The Court should decline to apply *Pike* balancing because Plaintiff's allegations fail to meet the "tall order in proving the invalidity" of the neutral License Conditions. *Truesdell v. Friedlander*, 80 F.4th 762, 774 (6th Cir. 2023). While the Sixth Circuit has undertaken *Pike* balancing after *Ross*, in the case Plaintiff identifies the Sixth Circuit (1) did not invalidate the challenged facially-neutral law under this test; (2) noted that the "Supreme Court 'has not invalidated a law under *Pike*' in more than 30 years;" and (3) cautioned that *Ross* imposes "important constraints on the *Pike* inquiry." *Id.* at 773–77 (quoting *Garber v. Menendez*, 888 F.3d 839, 845 (6th Cir. 2018)).

In applying *Pike* balancing, the Court must consider whether Plaintiff has shown that the law inflicts "substantial burdens on interstate commerce." *Ross*, 598 U.S. at 383 (cleaned up). This means that "the costs incurred by specific interstate businesses—in contrast to interstate *commerce* generally—do not matter." *Truesdell*, 80 F.4th at 774.

Plaintiff contends that the Court should apply *Pike* balancing to invalidate the License Conditions here but provides no basis for which the Court should do so. Plaintiff identifies no concrete examples or explanation on how the License Conditions impose impermissible burdens or disrupt *interstate commerce*. Indeed, Plaintiff makes no allegation that the License Conditions would somehow limit or prevent transportation of out-of-state waste to the Landfill. Even beyond this threshold inquiry into substantial burdens, *id.*, Plaintiff makes no allegation to demonstrate that Ohio's established interests in the regulation of landfills and disposal of solid waste, *Crossridge Inc.*, 1989 WL 252312 at *3, are outweighed by these nondescript burdens.

Plaintiff's allegations are plainly insufficient to invalidate the facially neutral regulations under *Pike* balancing. For all these reasons, Plaintiff's Commerce Clause claim fails as a matter of law.

## V. Plaintiff's Due Process Claims Fail as a Matter of Law.

Plaintiff's due process claims are rooted in its dissatisfaction with the outcome of the administrative process. Not the process itself. Plaintiff does not differentiate its due process arguments between its claims related to the 2023 or 2024 License Condition and the 2025 Notice of Intent to Deny. Therefore, Defendants reincorporate the arguments made in their Motion to Dismiss on these issues related to the lack of inadequate process and lack of property interest in receiving a condition-free license. (ECF No. 15, PageID #977–79.)

Simply, to maintain a Section 1983 action for a procedural due process violation, Plaintiff must allege there was a "constitutional violation under color of law and: (1) the state did not have any remedy; (2) the state had a remedy but it was deemed in adequate; or (3) that the state had an adequate remedy in form, both procedurally and in damages, but the state did not apply it or it misapplied its remedy." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999) (quoting *Haag v. Cuyahoga Cnty.*, 619 F. Supp. 262, 278-79 (N.D. Ohio 1985)). The nature and timing of when a

plaintiff faces an impartial decisionmaker is flexible under a due process inquiry. *McDaniels v. Flick,* 59 F.3d 446, 459 (3d Cir.1995).

Ohio law provides adequate pre- and post-deprivation remedies related to the issuance of landfill licenses. As stated, ERAC has full authority to review licensing decisions, hold evidentiary hearings, and strike down unlawful conditions on licenses. Ohio Rev. Code §§ 3745.04; 3745.05. After a final decision by ERAC, Plaintiff may appeal that decision to the Ohio Tenth District Court of Appeal. Ohio Rev. Code § 3745.06. Plaintiff has already availed itself of this process regarding the 2023 and 2024 Licenses (ECF No. 15, PageID #963–65) and was successful in doing so. There can be no legitimate allegation that Plaintiff did not have any remedy, the remedy was inadequate, or that the state failed to apply its remedy. Therefore, Plaintiff cannot now claim that it was subject to biased and impartial decision-making authority.

Moreover, regardless of Plaintiff's contentions that it was entitled to its 2025 license because of the Ohio EPA's substantial compliance determination, Plaintiff does not dispute that it has not been deprived of that license and can still actively operate the Landfill. (*See* ECF No. 15, PageID #977–78.) Therefore, Plaintiff cannot maintain a procedural due process claim. *Hahn*, 190 F.3d at 716.

## CONCLUSION

Plaintiff's collateral claims rest on its dissatisfaction with certain conditions on its landfill license. Abstention under *Burford* and dismissal of Plaintiff's Complaint are appropriate here because (1) Plaintiff requests equitable relief in the form of federal regulatory analysis related to the grant of its landfill licenses and enforcement of the associated license conditions; and (2) Ohio has created a comprehensive administrative regulatory framework for these same issues that risks disruption if the Court adjudicates this dispute. Alternatively, if the Court does not abstain, it must dismiss Plaintiff's Complaint for failure to state a claim. The Eleventh Amendment forecloses

14

claims against the District and the Health Board as well as the personal capacity and state law ultra

vires claims against the Board Defendants. Plaintiff's Commerce Clause and Due Process Clause

claims fail on their merits because Plaintiff fails to allege actionable discrimination, extraterritorial

effects, or denial of adequate process. For these reasons, Defendants request that the Court dismiss

Plaintiff's Complaint.


Dated: August 25, 2025                    Respectfully submitted,

                                          */s/ Robert A. Zimmerman*
                                          Robert A. Zimmerman (0055478)
                                          Nora K. Cook (0086399)
                                          Kennedy E. Dickson (1013767)
                                          BENESCH, FRIEDLANDER,
                                          COPLAN & ARONOFF LLP
                                          127 Public Square, Suite 4900
                                          Cleveland, OH  44114
                                          Telephone:  216.363.4505
                                          Facsimile:   216.363.4588
                                          Email:  rzimmerman@beneschlaw.com
                                                  ncook@beneschlaw.com
                                                  kdickson@beneschlaw.com
                                          *Attorneys for Defendants*


## CERTIFICATION OF COUNSEL

Pursuant to Local Rule 7.1(f), undersigned counsel hereby certifies that this memorandum

complies with the page limitation for standard track cases, such limitation applying in the absence

of any track designation for this case.


                                          */s/ Robert A. Zimmerman*
                                          *One of the Attorneys for Defendants*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 25, 2025, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

<u>/s/ Robert A. Zimmerman</u>
Robert A. Zimmerman
*One of the Attorneys for Defendants*

16